A. H. WILLARD v. E. H. STURM, Defendant, and THE
CHICAGO, ROCK ISLAND & PACIFIC RAILWAY
COMPANY, Garnishee, Appellant.

**Statute of Limitations:** CONSTITUTIONAL LAW.  A statute creating an
exemption for the wages of nonresidents cannot be given a
retroactive effect—such law affects existing contracts.  See chap-
ter 102, Acts Twenty-fifth General Assembly.

**Judgment:** ABANDONMENT.  A suit for wages brought in a sister
state will not abate garnishment proceedings, instituted in Iowa
before the beginning of said suit.  Neither will a judgment
rendered against the garnishee pending a determination of the
garnishment proceedings in Iowa bar such proceedings.

*Appeal from Pottawattamie District Court.*—HON.
WALTER I. SMITH, Judge.

TUESDAY, JANUARY 21, 1896.

This is a garnishment proceeding in which plaint-
iff is seeking to subject to the payment of a judgment
he holds against defendant Sturm certain wages due
Sturm from the railroad company.  The lower court
rendered judgment against the garnishee, and it
appeals.—*Affirmed*.

*Wright & Baldwin* for appellant.

*O. D. Wheeler* for appellee.

NOTE.—Authorities on protection of nonresident creditors against garnishment
are reviewed in *Railway Company v. Smith* (Miss.) 19 L. R. A. 577.

Deemer, J.—The case involves less than one hundred dollars, and comes to us on the following certificate, made by the trial judge in the manner required by law: "This was an action commenced before Ovide Vien, justice of the peace in and for Kane township, Pottawattamie county, Iowa, by A. H. Willard, a resident of Iowa. E. H. Sturm was an employe of the Chicago, Rock Island & Pacific Railway Co., residing in and earning his wages in Kansas. As head of a family his wages were exempt in said state. The action was commenced December 13, 1893. The company answered seventy-seven dollars and seventeen cents due. Judgment was rendered in favor of plaintiff for that amount on February 20, 1894, from which an appeal was taken to this court. Subsequent to the commencement of this action in this state, suit was commenced by E. H. Sturm, in justice's court in state of Kansas, for his wages, held under the garnishment proceedings in the Iowa case. The pending garnishment case was set up as a defense in the Kansas court, but, following *Railway Co. v. Scharitt,* 43 Kan. 375 (23 Pac. Rep. 430), judgment was rendered against the company, on February 5, 1894, for full amount of Sturm's wages. An appeal was taken from said judgment, which is still pending. Upon appeal to the district court in the present case, the above-described judgment was set up as a defense in said garnishment proceeding. The exemption laws of Kansas were also pleaded as a defense under section 3, chapter 102, of the Laws of the Twenty-fifth General Assembly of Iowa. That said case was submitted to me as judge of the said district court, upon an agreed statement of facts embodying the facts above set out, and judgment was rendered by me in favor of A. H. Willard, plaintiff, and against the Chicago, Rock Island & Pacific Railway Company, as garnishee, and entered

accordingly. That the questions hereby certified to in this cause involve the determination of the following questions of law, upon which it is desirable to have the opinion of the supreme court of Iowa: *First.* Is the rendition of the judgment in the Kansas court, based upon the amount due from garnishee to defendant as wages earned as aforesaid, a bar in a garnishment proceeding in this state, instituted prior to the commencement of the action in Kansas, covering the same wages, for which judgment was rendered in said Kansas court? *Second.* Where garnishment proceedings are commenced in Iowa, attaching wages not at that time exempt, but subsequently, and before judgment upon appeal, rendered exempt by an act of the legislature of Iowa, and where, prior to rendition of final judgment in the garnishment case, a judgment is rendered in the courts of another state, in an action commenced subsequent to such garnishment, covering the same wages, would such a suit, so started in the foreign court, have the effect of abating the garnishment proceedings in this state, pending the final determination of the case in the court of last resort of the foreign state? *Third.* Can the law granting to nonresidents the exemptions of their own state be pleaded as a bar in a garnishment proceeding instituted by a resident of Iowa prior to the passage of such law? Would such law have the effect of impairing the obligation of contracts, or would it merely pertain to the remedy?"

The first question should clearly be answered in the negative. From the time of the commencement of this action and the service of the notice of garnishment, the wages due and owing Sturm by the railway company were, to all intents and purposes, in the justice's court; or, at least, subject to its jurisdiction. This jurisdiction could not be

defeated by Sturm's action in the Kansas courts, taken after plaintiff had commenced his suit in this state. It is said, however, that, if this judgment is allowed to stand, the garnishee may be compelled to pay its debt twice. This is, no doubt, true, and it is certainly unfortunate, but it is no reason for relaxing well-settled rules of law. The court of this state first obtained jurisdiction, and must retain it to the end. If there has been any error, it seems to us it occurred in the Kansas courts. Drake, Attachm. sections 619-621; *German Bank v. American Fire Ins. Co.*, 83 Iowa, 491 (50 N. W. Rep. 53).

II. The second question involves a determination of both the first and the third. We have seen that the first should be answered in the negative, and we may add in this connection that, if the proceedings in the Kansas courts do not bar this action, then there is no reason why they should abate it. If it be conceded, as it must be under our previous holdings, that the courts of this state have jurisdiction of the subject, the wages due from the railroad company to Sturm, it is difficult to see upon what principle it can be claimed that the Kansas courts may, by any subsequent proceedings, oust our local courts of their jurisdiction, or how they can abate a suit properly instituted here.

III. We turn, then, to the third question, and find that the point made by appellant's counsel is that the Acts of the Twenty-fifth General Assembly (chapter 102, section 3), which, in effect, provide that wages exempt to a nonresident by the laws of his state shall also be exempt to him in all proceedings instituted in this state, to the same extent as if the suit were insti-

tuted in the state of his residence, relate to the remedy, and are retroactive in their operation. It will be noticed that this act had not been passed and did not take effect until after the garnishment proceedings were instituted in justice's court. Counsel for appellee contends that the exemption laws are a part of every contract, and that any law which thereafter exempts any property in the hands of the debtor which could have been reached prior to the enactment of the law impairs the obligation of the contract. The question is not a new one in this state. In the case of *Foster v. Byrne,* 76 Iowa, 295 (35 N. W. Rep. 513, and 41 N. W. Rep. 22, we held, following the decisions of the supreme court of the United States upon this subject, that a statute which undertakes, after contracts are entered into, to exempt property from seizure for their satisfaction which, but for the exemption created, would have been liable to seizure, was in conflict with the constitutional provision that "no state shall pass any law impairing the obligation of contracts." Following this decision, which we are not disposed at this time to question, we must answer the third question also in the negative.

The district court answered all these questions as we have indicated they should be, and its judgment is *affirmed.*